NO. 24-10610-GG

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————

**UNITED STATES OF AMERICA,**
                            **Plaintiff/appellee,**

**v.**

**CARLOS MORILLA,**
                            **Defendant/appellant.**

———————

**On Appeal from the United States District Court
for the Southern District of Florida**

———————

**APELLANT'S INITIAL BRIEF**

———————

> **HECTOR DOPICO**
> **Interim Federal Public Defender**
> **MaeAnn Dunker**
> **Assistant Federal Public Defender**
> **150 West Flagler Street, Suite 1700**
> **Miami, Florida 33130-1555**
> **Telephone No. (305) 533-4255**

---

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

## CERTIFICATE OF INTERESTED PERSONS

### United States v. Carlos Morilla
### Case No. 24-10610-GG

Appellant Carlos Alberto Morilla, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Butland, Shane, Assist. United States Attorney

Cardenas Calero, Yunier, Co-Defendant

Caruso, Michael, Assist. Federal Public Defender

Charest-Turken, Gabrielle Raemy, Assist. United States Attorney

Damian, Hon. Melissa

DeFabio, Joel, Esq.

Diaz, Jesus Javier, Co-defendant

Dodin, Yara, Assist. United States Attorney

Dopico, Hector A., Interim Federal Public Defender

Dunham, Christian, Assist. Federal Public Defender

Dunker, MaeAnn Renee, Assist. Federal Public Defender

Gomez, Otheniel, Co-Defendant

C-1 of 3

Goodman, Jonathan, United States Magistrate Judge

Haye, Nardia, Assist. United States Attorney

Kirkpatrick, Lynn, Assist. United States Attorney

Krasnoff, Lauren Filed, Former Assist. Federal Public Defender

Lapointe, Markenzy, United States Attorney

Lopez, Andrea Cristina, Esq.

Louis, Hon. Lauren Fleischer

Matzkin, Daniel, Assist. United States Attorney

Moore, K. Michael, United States District Court Judge

Morilla, Carlos Alberto, Defendant

Otazo-Reyes, Alicia M., United States Magistrate Judge

Pelier, Robert Nelson, Esq.

Rabin, Jr., Samuel Joseph, Esq.

Rodriguez-Varela, Nelson Armando, Esq.

Sanchez, Eduardo I., United States Magistrate Judge

Torres, Edwin G., United States Magistrate Judge

United States of America

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *MaeAnn Dunker*
MaeAnn Dunker
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 533-4255

C-3 of 3

## STATEMENT REGARDING ORAL ARGUMENT

Because this case presents important issues regarding the interpretation and application of a sentencing guidelines enhancement that can add years to a defendant's sentence, as well as this Court's *Keene*-finding jurisprudence, Mr. Morilla respectfully submits that oral argument is necessary to the just resolution of this appeal, and will significantly enhance the decision-making process.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS ............................................................... ii

TABLE OF AUTHORITIES ...................................................... iv

STATEMENT OF JURISDICTION ........................................... 1

STATEMENT OF THE ISSUES ............................................... 2

STATEMENT OF THE CASE ................................................... 3

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS IN

THE DISTRICT COURT ......................................................... 5

STANDARD OF REVIEW ....................................................... 14

SUMMARY OF THE ARGUMENT ........................................ 15

ARGUMENT AND CITATIONS OF AUTHORITY ............................... 17

I.      THE DISTRICT COURT ERRED BY APPLYING A TWO-
        LEVEL   ENHANCEMENT   FOR   "SOPHISTICATED
        LAUNDERING" UNDER U.S.S.G. § 2S1.1(B)(3)........................ 17

II.      THE DISTRICT COURT ERRED IN FAILING TO
         APPLY A MINOR ROLE ADJUSTMENT UNDER
         U.S.S.G. § 3B1.2(B). ................................................................21

III.     THE DISTRICT COURT'S ERRORS WERE NOT
         HARMLESS .............................................................................25

CONCLUSION .........................................................................................32

CERTIFICATE OF COMPLIANCE.........................................................33

CERTIFICATE OF SERVICE..................................................................34

# TABLE OF AUTHORITIES

<u>Cases</u>

*Gall v. United States,*

    552 U.S. 38 (2007) ............................................................. 26, 31

*Green v. United States,*

    365 U.S. 301 (1961). ............................................................. 29

*Kotteakos v. United States,*

    328 U.S. 750 (1946) ............................................................. 26

*Molina-Martinez v. United States,*

    578 U.S. 189 (2016) ............................................................. 25

*United States v. Anor,*

    762 F. App'x 707  (11th Cir. 2019) ..................................... 20

*United States v. Campa,*

    529 F.3d 980 (11th Cir. 2008) ............................................ 26

*United States v. Cubero,*

    754 F.3d 888 (11th Cir. 2014). ........................................... 29

iv

*United States v. Doyle,*

    857 F.3d 1115 (11th Cir. 2017). ........................................................... 30

*United States v. Gomez-Jimenez,*

    750 F.3d 370 (4th Cir. 2014) ............................................................... 31

*United States v. Hunter,*

    323 F.3d 1314  (11th Cir. 2003). .............................................. 19, 20, 21

*United States v. Keene,*

    470 F.3d 1347 (11th Cir. 2006) ............................ 16, 27, 28, 29, 31, 32

*United States v. Plasencia,*

    886 F.3d 1336 (11th Cir. 2018). ........................................................... 14

*United States v. Prouty,*

    303 F.3d 1249 (11th Cir. 2002) ...................................................... 29, 30

*United States v. Rodriguez De Varon,*

    175 F.3d 930 (11th Cir. 1999). ....................................................... 22, 23

*United States v. Rosales-Bruno,*

    789 F.3d 1249 (11th Cir.  2015). ......................................................... 29

*United States v. Turner,*

    626 F.3d 566 (11th Cir. 2010). ............................................................ 14

*United States v. Valois*,

   915 F.3d 717 (11th Cir. 2019) ...............................................................23

<u>STATUTES</u>

18 U.S.C. § 1956 ..............................................................................3, 17

18 U.S.C. § 1956(a)(3)(B) ......................................................................9

18 U.S.C. § 1956(h) ................................................................................9

18 U.S.C. § 3231 .....................................................................................1

18 U.S.C. § 3742 .....................................................................................1

28 U.S.C. § 1291 .....................................................................................1

<u>OTHER AUTHORITIES</u>

U.S.S.G. § 3B1.2(b) .........................................................................13, 21

U.S.S.G. § 3B1.2 cmt. n.3. ...............................................................22, 23

U.S.S.G. § 3B1.2 cmt. n.5 ......................................................................22

U.S.S.G. § 1B1.3 ............................................................................15, 19

U.S.S.G. § 2S1.1(b)(3)...................................... 3, 9, 10, 11, 13, 15, 17

U.S.S.G. § 2S1.1 cmt.n.5. .......................................................................17

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on February 26, 2024 (*United States v. Morilla*, No. 22-20153-KMM (S.D.FL) Docket Entry ("DE") 166), from the final judgment and commitment entered on February 23, 2024 (DE 163), which disposes of all claims between the parties to this cause.

1

## STATEMENT OF THE ISSUES

I.     WHETHER THE DISTRICT COURT ERRED BY
       APPLYING A TWO-LEVEL ENHANCEMENT
       BECAUSE THE OFFENSE "INVOLVED
       SOPHISTICATED LAUNDERING"

II.    WHETHER THE DISTRICT COURT ERRED BY
       DENYING MR. MORILLA'S REQUEST FOR A
       MINOR ROLE ADJUSTMENT

III.   WHETHER THE DISTRICT COURT'S ERRORS
       ARE HARMLESS

## STATEMENT OF THE CASE

Mr. Morilla pleaded guilty to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. Mr. Morilla appeals the district court's application of a two-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2S1.1(b)(3) for using "sophisticated laundering" when the district court failed to determine his scope of liability within the larger conspiracy and held him accountable for sophisticated laundering based on conduct of co-conspirators prior to Mr. Morilla joining the conspiracy. He further appeals the district court's failure to apply the minor role adjustment when Mr. Morilla joined the conspiracy a year later than his co-conspirators, was only involved for one month, and participated in only three transactions.

Mr. Morilla was the defendant in the district court and will be referred to by name or as the appellant. The respondent-appellee, United States of America, will be referred to as the Government. The record will be noted by reference to the document number, as set forth in the docket sheet, followed by the page number.

3

The appellant is incarcerated.

## STATEMENT OF FACTS AND COURSE OF PROCEEDINGS IN THE DISTRICT COURT

Beginning in March 2022, co-defendant Jesus Javier Diaz, an employee at Ocean Bank, began recruiting individuals to participate in a money laundering scheme involving known drug proceeds from drug traffickers in Colombia. PSI ¶ 10. In May 2022, Diaz began meeting with a confidential informant to discuss the laundering scheme, whereby Diaz would recruit individuals who were willing to assist in laundering the funds. PSI ¶ 10–11. Around the same time, Diaz recruited co-defendant Yunier Cardenas Calero to participate in the laundering and organize the other conspirators in the scheme. PSI ¶¶ 10–11. The confidential informant, at the direction of law enforcement, established an agreement with Calero where the confidential informant would provide cash to launderers, with Calero present to supervise, and the launderers would convert the cash into a cashier's check, less a laundering fee. PSI ¶ 12.

On May 10, 2022, the confidential informant met with Calero to conduct the first laundering transaction. PSI ¶ 13. The confidential

5

informant provided Calero with $60,000 in cash. PSI ¶ 13. Calero negotiated the cash at a bank for a $52,800 cashier's check in the name of Alliance Capital. The $52,800 represented the amount of the laundered funds less a 12% laundering fee. Calero also gave the confidential informant a $700 fee as a "cut" and stated that Calero would also immediately take Diaz a "cut." PSI ¶ 13.

On June 7, 2022, Calero conducted a second laundering transaction with $100,000 in cash from the confidential informant. PSI ¶ 14. Calero, with the confidential informant, negotiated the $100,000 in cash for two cashier's checks, each made out to Alliance Capital for $44,000. The total $88,000 represented the laundered $100,000 less a 12% laundering fee.  PSI ¶ 14. Calero and the confidential informant made similar transactions on June 23, 2022, July 14, 2022, August 11, 2022, and November 16, 2022. PSI ¶¶ 16–20. Each time, Calero negotiated cash provided by the confidential informant for a cashier's check made out to a covert company, provided the cashier's check to the confidential information, and retained a 12% laundering fee. PSI ¶¶ 16–20.

In October 2022, Diaz recruited co-defendant Othoniel Gomez to participate in the scheme. PSI ¶ 19. On October 19, 2022, Diaz met with Gomez and an undercover agent at a Starbucks, where Gomez agreed to accept wires and cash proceeds derived from proceeds of drug trafficking into Gomez's own bank accounts. Gomez agreed that he would then wire or deposit a cashier's check into bank accounts provided by the undercover agent. PSI ¶ 19. Gomez subsequently conducted two laundering transactions with $100,000 in cash, where Gomez would facilitate the transfer of the cash electronically. PSI ¶ 19.

On January 11, 2023, Gomez met in person with Diaz and an undercover agent at a Starbucks and proposed new ways of moving and hiding the money. PSI ¶ 22. Later the same day, Gomez met with the undercover agent in a parking lot and received $100,000 in cash. PSI ¶ 22. Gomez then took the $100,000 and delivered it to Diaz. Diaz, in turn, gave the cash to Calero. Calero then wired the money in three separate installments to law enforcement's undercover account. Gomez received a percentage of the funds as a laundering fee. PSI ¶ 22–23.

In March 2023, a full year after the conspiracy began, Mr. Morilla joined the laundering scheme. PSI ¶ 24. On March 14, 2023, Mr. Morilla met with the undercover agent at a Starbucks. The undercover agent provided Mr. Morilla with $200,000 in cash and informed him that the cash was derived from drug trafficking proceeds. PSI ¶ 24. The next day, Mr. Morilla wired $188,000 into the undercover agent's account. PSI ¶ 24. The $188,000 represents the laundered funds less a 6% laundering fee. PSI ¶ 24.

On March 24, 2023, the undercover agent met with Mr. Morilla again and provided him with $150,000 in cash. PSI ¶ 25. A few days later, Mr. Morilla wired $135,000 to the undercover agent's account. The $135,000 represents the laundered funds minus a 6% laundering fee. PSI ¶ 25.

On April 20, 2023, Mr. Morilla made a third transaction. PSI ¶ 26. The undercover agent wired $200,000 to an account controlled by Mr. Morilla. Mr. Morilla, in turn, wired $188,000 into an account number that had Diaz had provided. PSI ¶ 26. This amount again represented the laundered funds minus a 6% laundering fee. The subject line for the

8

wire said "Purchase venta de dronas." PSI ¶ 26. This was Mr. Morilla's final laundering transaction.

On June 21, 2023, federal prosecutors filed an 18-count indictment against Mr. Morilla, Gomez, Diaz, and Calero. DE 5. The Indictment charged Mr. Morilla in Count 1 with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and in Counts 16–18 with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B), for his laundering acts between March 14–April 20, 2023. Mr. Morilla was not named in the remaining counts, each of which occurred prior to Mr. Morilla joining the conspiracy in March 2023. *See* DE 5.

On September 26, 2023, Mr. Morilla pleaded guilty to one count of conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h). PSI ¶ 1. The Presentence Investigation ("PSI") calculated Mr. Morilla's guidelines as 57 to 71 months, based on a total adjusted offense level of 25, and a criminal history category of I. PSI ¶ 91. In calculating the guidelines, the PSI applied a two-level enhancement under § 2S1.1(b)(3) because the offense "involved sophisticated laundering." PSI ¶ 40. In evaluating the roles of the co-defendants, the

9

PSI also failed to apply an adjustment for Mr. Morilla's minor role in the offense. PSI ¶¶ 30–33.

Mr. Morilla filed written objections, arguing that the sophisticated laundering enhancement should not apply because his conduct was limited to three transactions, which involved only a single layer of concealment, and did not otherwise require sufficiently complex means to complete. DE 92 at 5–7. He also argued that the PSI should apply a minor role adjustment in his case because his conduct was limited to three transactions over a single month, he only became involved almost a year after the conspiracy began, and he stood to gain much less than the other defendants. DE 92 at 2–5. The Government did not file a written response to the objections.

On February 22, 2024, the parties appeared for sentencing. At the sentencing, the Government informed the Court that it agreed with Mr. Morilla that the sophisticated laundering enhancement should not apply "based on the factors that are outlined in 2S1.1" and because Mr. Morilla's conduct involved just "one layer, which was the one transfer, one transaction from his account into the undercover's account." DE 226

10

at 8–9. The parties agreed that based on the commentary in § 2S1.1, the enhancement should not apply. Mr. Morilla also argued that he should receive an adjustment for his minor role in the offense, articulating the factors outlined in his written objections. DE 92 at 2–4; DE 226 at 3–5. The Government opposed Mr. Morilla's request as to the minor role adjustment. DE 226 at 5–7.

The district court overruled both Mr. Morilla's objections. DE 226 at 11. As to the sophisticated laundering enhancement, the district court noted that "the offense conduct is sufficient to establish sophisticated means application" and adopted the probation officer's response to the objection, which had reasoned that the sophisticated laundering enhancement should apply because "the [undercover] brought the defendant cash, and the defendant took the cash and wired money back to the [undercover]" and that others in the conspiracy "took cash and negotiated cashier's checks made out to covert companies." PSI, addendum 2; DE 226 at 11. The district court also denied Mr. Morilla's request for a minor role adjustment based on "the offense conduct and the evidence [] heard at [Gomez's] trial." DE 226 at 11.

11

Immediately after overruling the objections, and prior to consideration of the 18 U.S.C. § 3553(a) factors or Mr. Morilla's allocution, the district court stated:

> And, I will also note that in the event that there is any appeal on either of those objections, that I would impose a sentence independent of the guidelines as a reasonable sentence under post-*Booker* that would be equivalent to the sentence that I would impose under the guideline provision, as well. Okay. So, you have that alternative sentence.

DE 226 at 11–12.

After these rulings, the court calculated an advisory guideline range of 57 to 71 months, based on a total offense level of 25 and a criminal history category of I. DE 226 at 12. Had the district court sustained Mr. Morilla's objections to both the sophisticated laundering enhancement and to the minor role objection, the total offense guideline range would have become 37 to 46 months.

After its calculation of the guidelines, the district court heard Mr. Morilla's allocution as well as argument from the parties concerning the 18 U.S.C. § 3553(a) factors. The parties each sought a sentence at the low end of the as-calculated guideline range. DE 226 at 12, 14. After the

12

parties' presentations, the district court sentenced Mr. Morilla to 57 months of imprisonment. DE 226 at 17.

At the conclusion of the sentencing hearing, when asked whether the defendant or counsel objected to the court's findings of fact or manner in which sentence was pronounced, counsel for Mr. Morilla preserved his objection to the district court's application of the § 2S1.1(b)(3) enhancement and the failure to apply a minor role adjustment under § 3B1.2(b). DE 226 at 18.

This appeal follows.

Mr. Morilla is incarcerated.

## STANDARD OF REVIEW

For sentencing issues, the Court reviews factual findings for clear error and application of the Guidelines *de novo*. *United States v. Plasencia*, 886 F.3d 1336 (11th Cir. 2018). The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

The district court erred by applying a two-level enhancement under U.S.S.G. § 2S1.1(b)(3), which applies where the defendant's conduct "involved sophisticated laundering." Here, the district court failed to determine the scope of the joint criminal activity that the Mr. Morilla agreed to undertake pursuant to U.S.S.G. § 1B1.3 and applied the sophisticated laundering enhancement based on conduct committed by Mr. Morilla's co-defendants prior to Mr. Morilla joining the conspiracy, in violation of this Circuit's well-established law regarding relevant conduct and the scope of sentencing liability.

Similarly, because the district court failed to determine the scope of Mr. Morilla's criminal activity, it did not properly assess whether Mr. Morilla played a minor role in the offense. The minor role adjustment should have been applied because Mr. Morilla's conduct was limited to three, one-step laundering transactions over a period of one month, he lacked knowledge or control about the overall conspiracy, and he stood to gain much less than the other co-conspirators.

15

These errors were not harmless. The Supreme Court has recognized that, in the ordinary case, the application of an incorrect guideline range will be sufficient to show prejudice. And, in this case, the district court imposed a sentence within the erroneously-calculated guidelines range, and clearly gave significant weight to the guideline range in sentencing.

The district court's purported *"Keene"* finding, furthermore, was made prior to the district court hearing argument on the § 3553(a) sentencing factors, was invalid, and cannot insulate its sentence from appellate review.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.    THE DISTRICT COURT ERRED BY APPLYING A TWO-LEVEL ENHANCEMENT FOR "SOPHISTICATED LAUNDERING" UNDER U.S.S.G. § 2S1.1(b)(3)

Section 2S1.1(b)(3) of the Sentencing Guidelines provides a two-level increase if an offense involved "sophisticated laundering." U.S.S.G. § 2S1.1(b)(3). The commentary to this guideline instructs that "sophisticated laundering" means "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." U.S.S.G. § 2S1.1, cmt.n.5(A). The commentary further notes that sophisticated laundering typically involves the use of: fictitious entities; shell corporations; layering of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or offshore financial accounts. *Id.*

At sentencing, Mr. Morilla argued—and the Government agreed—that the sophisticated laundering enhancement should not apply to his conduct. Mr. Morilla's conduct did not include any offshore accounts, no

17

fictional or shell companies, and no multi-layered laundering. DE 226 at 7–8. Mr. Morilla only made a handful of wire transfers out of accounts maintained in his true name. In essence, Mr. Morilla's conduct involved only one-step laundering.

Although the Government noted that the enhancement may apply to the overall conspiracy with the co-defendants, as to Mr. Morilla, it agreed that the enhancement should not apply because the factors in § 2S1.1 did not apply to the scope of Mr. Morilla's of the criminal activity. Instead, the Government noted that Mr. Morilla's conduct involved just "one layer, which was the one transfer, one transaction from his account into the undercover's account." DE 226 at 8–9.

In overruling Mr. Morilla's objection, the district court noted that it had "presided over the trial and heard the evidence" against co-defendant Gomez. DE 226 at 11. The district court then found that "the offense conduct is sufficient to establish sophisticated means application" and "adopt[ed] the probation officer's response as to both objections[.]" DE 226 at 11. In so doing, the district court appeared to overrule Mr. Morilla's objection because it found that the evidence of

18

the overall laundering conspiracy presented during co-defendant Gomez's trial, and the offense conduct applicable to Mr. Morilla's co-conspirators in the PSI, established an overall sophisticated laundering scheme, even if Mr. Morilla's individual conduct did not.

The district court erred in applying this enhancement without making individualized findings about the scope of criminal activity undertaken by Mr. Morilla and also based on the acts of Mr. Morilla's co-defendants prior to him joining the conspiracy in March 2023. It is well established that "[t]he limits of sentencing accountability are not coextensive with the scope of criminal liability." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003). The Sentencing Guidelines provide that sentencing liability for the reasonably foreseeable acts of others is limited by the scope of the criminal activity the defendant agreed to jointly undertake. *See* U.S.S.G. § 1B1.3, cmt.n.2. Critically, a defendant may not be held accountable at sentencing for acts of co-conspirators that occurred prior to him joining the conspiracy. *See* U.S.S.G. § 1B1.3, cmt.n.3(B) ("A defendant's relevant conduct does not include the conduct of members of a

19

conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct[.]").

In *United States v. Hunter*, this Court found that the district court erred when it failed to determine the defendant's scope of relevant conduct in a multi-defendant counterfeit check cashing conspiracy. 323 F.3d at 1320. While the district court had made findings regarding whether the actions of the defendant's co-conspirators were reasonably foreseeable to the defendant, the district court did not determine the scope of the criminal activity that the defendant agreed to undertake in the larger operation. *Id.* Instead, it "held simply that because each Defendant knew that he or she was part of a ring, he or she should be held accountable for all the acts of all of the members" at sentencing. *Id.* Specifically, the district court held the defendant accountable for conduct of co-conspirators that occurred prior to his entry into the conspiracy. *Id.* at 1321–22. This Court found that in so doing, the district court committed reversible error. *Id.* at 1321–22; *see also United States v. Anor*, 762 F. App'x 707, 711 (11th Cir. 2019) (unpublished) (vacating defendant's sentence and remanding when district court did

not make a particularized finding of defendant's agreement in joint criminal activity).

Here, just as in *Hunter*, the district court failed to make particularized findings about Mr. Morilla's scope of liability in the joint criminal activity and applied a sentencing enhancement based on the conspiracy as a whole, rather than the scope of Mr. Morilla's agreement in the joint conspiracy. Further, while the district court noted it relied on the "offense conduct" in applying the application, it did not differentiate between the conduct of the co-defendants prior to Mr. Morilla joining the conspiracy in March 2023, which was the bulk of the offense conduct noted in the PSI. PSI ¶¶ 10–23. This procedural error resulted in the misapplication of the sophisticated laundering enhancement and an inflated guideline range.

## II.    THE DISTRICT COURT ERRED IN FAILING TO APPLY A MINOR ROLE ADJUSTMENT UNDER U.S.S.G. § 3B1.2(B).

Section 3B1.2 of the Sentencing Guidelines provides that a defendant is entitled to a two-level decrease in his offense level if he was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b).

21

A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt.n.5. The decision whether to apply a minor-role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt.n.3(C)

In deciding whether the minor role adjustment should apply, the district court should consider: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999).

The commentary to § 3B1.2 also directs sentencing courts to consider the following factors: (a) "the degree to which the defendant understood the scope and structure of the criminal activity"; (b) "the degree to which the defendant participated in planning or organizing the criminal activity"; (c) "the degree to which the defendant exercised decision-making authority"; (d) "the nature and extent of the

22

defendant's participation in the commission of the criminal activity"; and (e) "the degree to which the defendant stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt.n.3(C).

The commentary also advises that a defendant may receive a minor-role adjustment when he is held accountable for a loss amount that "greatly exceeds [his] personal gain from a fraud offense" or when he "had limited knowledge of the scope of the scheme." *Id.* § 3B1.2, cmt. n.3(A). In deciding whether to apply a minor role reduction, a court "must consider all of the[ ] factors [identified in § 3B1.2's commentary] to the extent applicable, and it commits legal error in making a minor role decision based solely on one factor." *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (internal quotation marks omitted).

Similar to the sophisticated laundering enhancement, the district court erred in failing to determine the scope of the criminal activity undertaken by Mr. Morilla. Without this finding, the district court could not have properly considered whether Mr. Morilla was entitled to a minor role adjustment. *See De Varon*, 175 F.3d at 940–41 (instructing

that the district court must first evaluate the defendant's role and scope of liability in the offense).

Further, in adopting the probation officer's response, the district court appears to have relied solely on one factor—that is, according to the probation officer, Mr. Morilla had a vested interest in the outcome of the laundering. PSI, addendum 2. The district court did not consider that Mr. Morilla did not join the conspiracy until one year later than the other co-defendants, was only involved for a single month, did not recruit others or propose new ways of laundering like the co-defendants, and stood to gain much less than the other co-defendants through a 6% laundering fee, as opposed to a 12% laundering fee.

Had the district court properly determined Mr. Morilla's scope of criminal liability and evaluated all the factors applicable to a minor role adjustment, it would have determined that Mr. Morilla fits squarely into the category of defendants to whom the minor role adjustment should apply. Mr. Morilla performed a limited function for a period of only a month. He was held accountable for $550,000 in a loss amount—a number that greatly exceeds his personal gain of $33,000 (the 6%

24

laundering fee). Mr. Morilla was recruited by co-defendant Diaz, and did not personally organize or plan any of the activity. Mr. Morilla had no decision making authority or influence over others. His conduct was limited to three transactions, all occurring in less than a month, while the overall conspiracy involved at least one dozen transactions occurring over the course of a year.

Instead of carefully evaluating all the factors applicable to the minor role adjustment, the district court, as it had with the sophisticated laundering enhancement, failed to determine the scope of Mr. Morilla's criminal liability and lumped him with the other co-defendants. In so doing, it also failed to properly consider all the factors applicable to a minor role adjustment, which resulted in a miscalculation of the guidelines.

## III. THE DISTRICT COURT'S ERRORS WERE NOT HARMLESS

The Supreme Court has held that when a district court improperly calculates the guideline range at sentencing, it commits a "significant procedural error." *Molina-Martinez v. United States*, 578 U.S. 189, 199

(2016) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). In the ordinary case, a defendant is presumed to suffer prejudice when the district court applies "an incorrect, higher Guidelines range[.]" *Id.* at 201. Here, because Mr. Morilla preserved his objection to both the sophisticated laundering enhancement and the minor role adjustment in the district court (DE 92), it is the Government's burden to prove that those errors were harmless. *United States v. Campa*, 529 F.3d 980, 1013 (11th Cir. 2008). A sentencing error under the guidelines is harmless when "a court considers the proceedings in their entirety and determines that the error did not affect the sentence 'or had but very slight effect[.]" *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

Here, because the district court miscalculated the guideline range, resulting in a range substantially higher than it would otherwise be, the Government cannot meet its burden to show that the error was harmless. The application of the sophisticated laundering enhancement alone raised Mr. Morilla's guideline range from 46 to 57 months to 57 to 71 months. Had the district court also applied a minor role adjustment,

Mr. Morilla's guideline range would be 37 to 46 months—a difference of almost two years. Such a drastic change in the guideline benchmark surely cannot be described as harmless.

Nor does the district court's *Keene* finding insulate the sentence from review. Immediately after denying Mr. Morilla's objections, and before hearing argument from the parties regarding the § 3553(a) factors or heard from Mr. Morilla himself, the district court announced:

> And, I will also note that in the event that there is any appeal on either of those objections, that I would impose a sentence independent of the guidelines as a reasonable sentence under post-*Booker* that would be equivalent to the sentence that I would impose under the guideline provision, as well. Okay. So, you have that alternative sentence.

DE 226 at 11–12.

Such a premature statement is not in keeping with this Court's reasoning in *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), and cannot be used to insulate the district court's sentencing from review. In *Keene*, this Court established its standard for "assumed error harmlessness review." 470 F.3d at 1349. There, the district court reviewed and overruled Mr. Keene's objections to his PSI, found what it believed to be the appropriate guidelines range, considered the

27

§ 3553(a) factors, pronounced sentence, and then noted that "even if the guideline calculations are wrong, my application of the sentencing factors under Section 3553(a) would still compel the conclusion that a 10-year sentence is reasonable and appropriate under all the factors that I considered." *Id.* This Court sanctioned such a practice, but only because the district court had made clear that the sentence imposed would remain the same even "after the 3553(a) factors are considered." *Id.*

What occurred here, however, stretches *Keene* beyond even its broadest boundaries. The district court made its "*Keene*" finding before considering any of the factors courts are required to consider when fashioning a sentence. Properly calculating the guidelines is the beginning of the sentencing court's responsibility, but it is not the end. Before imposing sentence, the court must consider all of the sentencing factors outlined in 18 U.S.C. § 3553(a) and must ultimately fashion a sentence that is "sufficient, but not greater than necessary" to serve the purposes of punishment. 18 U.S.C. § 3553(a). This is a "holistic" process that requires consideration of the specific individual before the court,

and therefore requires the court to hear from the parties about the individual facts and circumstances of the case before pronouncing a sentence. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Although the court has considerable discretion in how to weigh the § 3553(a) factors, it is required to consider them, and a *Keene* finding prior to hearing the § 3553(a) factors does not change this requirement. *Id.; see also United States v. Cubero*, 754 F.3d 888, 892–93 (11th Cir. 2014).

Moreover, as this Court has made abundantly clear, the right of a defendant to allocate is sacrosanct; it "is the type of important safeguard that helps assure the fairness, and hence legitimacy, of the sentencing process." *United States v. Prouty*, 303 F.3d 1249, 1253 (11th Cir. 2002) (citation and internal quotation marks omitted). The right to allocution dates back to the common law: "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green v. United States*, 365 U.S. 301, 304 (1961). Failing to provide a defendant the opportunity to allocate before imposing sentence creates

a presumption of prejudice and requires reversal. *See United States v. Doyle*, 857 F.3d 1115, 1120–21 (11th Cir. 2017).

This rule makes sense. At the end of the day, the sentencing court must conduct an individualized analysis to ensure that the sentence it imposes is "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a); "denying [a] defendant his right to allocution [is] tantamount to denying him his most persuasive and eloquent advocate," and denies the district court "the opportunity to take into consideration the defendant's unique perspective on the circumstances relevant to his sentence, delivered by his own voice." *Prouty*, 303 F.3d at 1253 (citations omitted).

Given the importance of allocution, and the requirement for a sentencing court to consider the § 3553(a) factors, it simply cannot be that the sentencing court can insulate itself from appellate review by proclaiming—before hearing any argument regarding the § 3553(a) factors or providing the accused the opportunity to allocate—that it would have imposed the same sentence anyway. That would impose these procedural safeguards meaningless, and federal sentencing

30

hearings, the requirements of § 3553(a), and the foundational right to allocution, would become a legal fiction.

That is precisely what happened here. If this Court allows sentencing courts to insulate a sentence before actually conducting a sentencing hearing, then what followed the district court's *Keene* proclamation here may as well have not happened at all because it has been preemptively rendered meaningless. Additionally, to allow what is a significantly above-guidelines sentence without the explanation normally required for such sentences, fails to comport with the need "to allow for meaningful appellate review and to promote the perception of fair justice." *Gall*, 552 U.S. at 50. "Nothing could be less meaningful than labeling an error harmless so long as a district court states it would impose the same sentence in the event it erred, without also thoroughly explaining why it would do so. The exception has now swallowed the rule." *United States v. Gomez-Jimenez*, 750 F.3d 370, 390 (4th Cir. 2014) (Gregory, J., concurring in part and dissenting in part).

It cannot be that a few magic words, said at the start of a sentencing hearing, can render the entirety of what follows irrelevant on appellate review. Even *Keene* has to have its boundaries, and they have been stretched beyond recognition here. The district court erred in announcing its *Keene* finding when it did, and it therefore cannot be used as a shield to guard against appellate review of the sentencing error raised herein.

## CONCLUSION

For the forgoing reasons, Mr. Morilla respectfully asks this Court to vacate his sentence and remand his case to the district court for resentencing.

HECTOR DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

By:  */s/ MaeAnn Dunker*
MAEANN DUNKER
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 533-4255

32

## **CERTIFICATE OF COMPLIANCE**

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 5,149 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

/s/ *MaeAnn Dunker*
MAEANN DUNKER

## CERTIFICATE OF SERVICE

I HEREBY certify that on this date, July 3, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent seven copies to the Clerk of the Court via third party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Daniel Matzkin, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.


/s/ *MaeAnn Dunker*
MAEANN DUNKER