IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **24-10610**

United States of America,

Appellee,

- versus -

Carlos Alberto Morilla,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

<u>BRIEF FOR THE UNITED STATES</u>

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9280

Daniel Matzkin
Chief, Appellate Division

Michael C. Mikulic
Assistant United States Attorney

Of Counsel

**United States v. Carlos Alberto Morilla, Case No. 24-10610**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities who have an interest in the outcome of this case.

Butland, Shane

Cardenas Calero, Yunier

Caruso, Michael

Charest-Turken, Gabrielle Raemy

Damian, Hon. Melissa

DeFabio, Joel

Diaz, Jesus Javier

Dodin, Yara

Dopico, Hector A.

Dunham, Christan

Dunker, MaeAnn Renee

Gomez, Othoniel

Goodman, Hon. Jonathan

Haye, Nardia

Kirkpatrick, Lynn

Krasnoff, Lauren Field

**United States v. Carlos Alberto Morilla, Case No. 24-10610**

**Certificate of Interested Persons (Continued)**

Lapointe, Markenzy

Lopez, Andrea Cristina

Louis, Hon. Lauren Fleischer

Matzkin, Daniel

Mikulic, Michael

Moore, Hon. K. Michael

Morilla, Carlos Alberto

Otazo-Reyes, Hon. Alicia M.

Pelier, Robert Nelson

Rabin, Jr., Samuel Joseph

Rodriguez-Varela, Nelson Armando

Sanchez, Hon. Eduardo I.

Torres, Hon. Edwin G.

United States of America

/s/Michael C. Mikulic
Michael C. Mikulic
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the briefs and record before this Court adequately present the facts and legal arguments and that oral argument would not significantly aid the decisional process.

## Table of Contents

**Page:**

Certificate of Interested Persons .......................................................... c-1

Statement Regarding Oral Argument ......................................................i

Table of Contents ................................................................................ ii

Table of Citations .............................................................................iv

Statement of Jurisdiction ................................................................. viii

Statement of the Issues .......................................................................1

Statement of the Case........................................................................1

1.    Course of Proceedings and Disposition in the District Court Below..............1

2.    Statement of the Facts........................................................................2

    A.   Morilla's Conduct and the Money Laundering Scheme at Large ..........2

    B.   The Presentence Investigation Report ("PSI") and Objections...............4

    C.   The Sentencing Hearing........................................................................6

3.    Standard of Review .......................................................................11

Summary of the Argument ................................................................12

# Table of Contents

# (Continued)

**Page:**

Argument:

I. This Court Need Not Reach the Merits of Morilla's Arguments on Appeal Because the District Court Made a Valid *Keene* Finding ................................................................................... 13

II. Should this Court Deem the *Keene* Finding Invalid, the Government Concedes that the Sophisticated Laundering Enhancement Does Not Apply ........................................... 20

III. Should this Court Deem the *Keene* Finding Invalid, Morilla Fails to Show that the District Court Clearly Erred in Refusing to Apply a Minor Role Adjustment ....................................... 22

Conclusion ............................................................................................. 27

Certificate of Compliance ..................................................................... 28

Certificate of Service ............................................................................ 28

**Table of Citations**

**Cases:**                                                                                                   **Page:**

*Gall v. United States*,

  552 U.S. 38 (2007)......................................................................................... 18

*United States v. Baldwin*,

  774 F.3d 711 (11th Cir. 2014)......................................................................22

*United States v. Dougherty*,

  754 F.3d 1353 (11th Cir. 2014)....................................................................20

*United States v. Feaster*,

  798 F.3d 1374 (11th Cir. 2015)....................................................................11

*United States v. Ghertler*,

  605 F.3d 1256 (11th Cir. 2010)....................................................................11

*United States v. Gonzalez*,

  550 F.3d 1319 (11th Cir. 2008)....................................................................20

*United States v. Hunter*,

  323 F.3d 1314 (11th Cir. 2003)....................................................................21

*United States v. Irey*,

  612 F.3d 1160 (11th Cir. 2010)....................................................................19

*United States v. Isaac*,

  987 F.3d 980 (11th Cir. 2021)......................................................................11

**Table of Citations**

**(Continued)**

<u>**Cases:**</u>                                                                                                      <u>**Page:**</u>

*United States v. Ismond*,

   993 F.2d 1498 (11th Cir. 1993) ............................................................................21

*United States v. Keene*,

   470 F.3d 1347 (11th Cir. 2006) ........................................................ 1, 13, 14, 18

*United States v. Puerto*,

   392 F. App'x 692 (11th Cir. 2010) ......................................................................12

*United States v. Pugh*,

   515 F.3d 1179 (11th Cir. 2008) ...........................................................................19

*United States v. Rodriguez De Varon*,

   175 F.3d 930 (11th Cir. 1999) ........................................................ 12, 24, 25, 26

*United States v. Rodriguez*,

   751 F.3d 1244 (11th Cir. 2014) ...........................................................................12

*United States v. Rosales-Bruno*,

   789 F.3d 1249 (11th Cir. 2015) ...........................................................................20

*United States v. Rothenberg*,

   610 F.3d 621 (11th Cir. 2010) .............................................................................11

# Table of Citations

## (Continued)

**Cases:**                                                                          **Page:**

*United States v. Stein,*

    964 F.3d 1313 (11th Cir. 2020) ........................................................................12

*United States v. Williams,*

    431 F.3d 767 (11th Cir. 2005) ..........................................................................14

*United States v. Williams,*

    526 F.3d 1312 (11th Cir. 2008) ........................................................................20

**Statutes & Other Authorities:**

18 U.S.C. § 1956 ...........................................................................................1, 4

18 U.S.C. § 3231 ............................................................................................ viii

18 U.S.C. § 3553 ........................................................ 9, 11, 12, 14, 18, 19

18 U.S.C. § 3742 ............................................................................................ viii

28 U.S.C. § 1291 ............................................................................................ viii

Fed. R. App. P. 4 ............................................................................................ viii

Fed. R. App. P. 26.1 ........................................................................................ c-1

Fed. R. App. P. 32 ............................................................................................28

## Table of Citations

## (Continued)

**United States Sentencing Guidelines:**                                    **Page:**

U.S.S.G. § 1B1.3...................................................................................................21

U.S.S.G. § 2B1.1.....................................................................................................6

U.S.S.G. § 2S1.1 ................................................................... 4, 6, 7, 8, 13, 22

U.S.S.G. § 3B1.2................................................................................ 5, 13, 23

**Statement of Jurisdiction**

This is a criminal appeal from a final judgment of the United States District Court for the Southern District of Florida. The district court entered judgment against defendant Carlos Alberto Morilla ("Morilla") on February 22, 2024 (D.E. 163). The district court had jurisdiction to do so pursuant to 18 U.S.C. § 3231. Morilla filed a timely notice of appeal on February 26, 2024 (D.E. 166). *See* Fed. R. App. P. 4(b). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and has authority to review Morilla's sentence under 18 U.S.C. § 3742(a).

**Statement of the Issues**

I.      Whether the district court reversibly erred at sentencing with respect to its application of the sophisticated laundering enhancement and non-application of the minor role adjustment where the court made a finding under *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), and stated that it would have imposed the same sentence regardless of its rulings on the enhancement and adjustment.

II.      Whether, should this Court deem the *Keene* finding invalid, the district court clearly erred when it applied the sophisticated laundering enhancement.

III.      Whether, should this Court deem the *Keene* finding invalid, the district court clearly erred when it refused to apply a minor role adjustment in light of the record evidence showing that Morilla played a substantial role in the money laundering scheme, including laundering nearly half of all the monies involved.

**Statement of the Case**

**1.      Course of Proceedings and Disposition in the District Court Below**

A grand jury in the Southern District of Florida returned a superseding indictment charging Morilla with conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(h) (count one), as well as money laundering in violation of 18 U.S.C. § 1956(a)(3)(B) (counts sixteen through eighteen) (D.E. 5, at

1-2, 5-6).[1]  Pursuant to a plea agreement, Morilla pleaded guilty to the first count in exchange for the Government dropping the remaining money laundering counts (D.E. 50, at 1, *see also* D.E. 54).  The district court sentenced Morilla to 57 months in prison, followed by two years of supervised release (D.E. 163, at 2-3).

**2.      Statement of the Facts**

**A.      Morilla's Conduct and the Money Laundering Scheme at Large**

The instant case deals with money laundering.  Jesus Diaz ("Diaz"), Morilla, Yunier Calero ("Calero"), and Othoniel Gomez ("Gomez") "participated in the laundering of money from as early as March 2022 through May 2023" (D.E. 72, at ¶ 10, *see also* D.E. 49, at 1).  "The general scheme involved Diaz coordinating meetings between Morilla, Calero, Gomez and an undercover agent (UC), where the UC would bring cash to Morilla, Calero, or Gomez and they would take the cash and then wire the money back to the UC's undercover account," after receiving a fee for doing so (D.E. 72, at ¶¶ 10, 11, *see also* D.E. 49, at 1).  Each of the co-conspirators knew that the source of the proceeds was the sale of controlled substances, including cocaine (D.E. 72, at ¶¶ 10, 12, 19, 22, 24, 33, *see also* D.E. 49, at 1).  In some instances, instead of wiring the money back to the UC or confidential informant

---

[1]      Consistent with Eleventh Circuit Rule 28-5, all record citations herein refer to the Case Management/Electronic Case Files ("CM/ECF") page number.

("CI"), the co-conspirators would convert the cash into cashier's checks (less a laundering fee), and then return the check to the UC or CI (D.E. 72, at ¶¶ 11, 32).

More specifically, Diaz was responsible for recruiting the other co-conspirators and was the "point of contact" for all involved, from the UCs and CIs to the co-defendants (D.E. 72, at ¶¶ 10, 30). As for Morilla, he laundered money on three instances for a total of $550,000 (D.E. 72, at ¶¶ 24-26, 31, *see also* D.E. 49, at 1-2). In the first instance, the UC and Morilla met at a Starbucks where "[t]he UC gave Morilla $200,000 in cash," and then Morilla wired $188,000 back to the UC's undercover account minus a six percent laundering fee (D.E. 72, at ¶ 24, *see also* D.E. 49, at 1; D.E. 91, at 2). In the second instance, which occurred ten days later, the UC and Morilla again met at Starbucks where "[t]he UC gave Morilla $150,000 in cash. Morilla took the cash and wired the UC $135,000 from Morilla's account" (D.E. 72, at ¶ 25, *see also* D.E. 49, at 2). Like the first time, Morilla took a fee, though a slightly larger percentage (D.E. 72, at ¶ 25, *see also* D.E. 49, at 2). Almost one month later, Morilla committed his third laundering offense. On that occasion, "the UC sent Morilla $200,000 through a wire transfer" (D.E. 72, at ¶ 26, *see also* D.E. 49, at 2). Then, using an account he controlled, Morilla sent the UC a wire transfer back, this time with $188,000 (D.E. 72, at ¶ 26, *see also* D.E. 49, at 2). When sending the wire, Morilla added the subject line "Purchase venta de dronas" (D.E. 72, at ¶ 26, *see also* D.E. 49, at 2). Again, Morilla took a six percent fee (D.E.

72, at ¶ 26, *see also* D.E. 49, at 2). All in all, Morilla laundered $550,000, and made $39,000 as a result of his fees (D.E. 72, at ¶¶ 24-26, 31, *see also* D.E. 49, at 1-2).

As for Calero, he laundered money "on various occasions" for a total of $615,000 (D.E. 72, at ¶ 32). After receiving cash from a CI, Calero would sometimes write checks made out to "a covert company," and then hand the check back to the CI (*id.* at ¶¶ 16-18). The last co-defendant, Gomez, laundered money on three occasions, totaling $200,000 (*id.* at ¶¶ 19, 21, 22, 23, 33). In one meeting with a UC, "Gomez proposed new ways of moving money for the UC" (*id.* at ¶ 22).

## B.    The Presentence Investigation Report ("PSI") and Objections

After Morilla pleaded guilty to count one, the case proceeded to sentencing. To aid the district at sentencing, the United States Probation Office prepared a PSI (D.E. 72). Pursuant to 18 U.S.C. § 1956(h), the maximum term of imprisonment for conspiracy to engage in money laundering was twenty years (*id.* at ¶ 90). After calculating that Morilla had a base offense level of 20 due in part to the amount of money Morilla laundered, the probation officer added six points because Morilla knew that the source of the funds was drug trafficking (*id.* at ¶ 38). The officer added another two points because the Government convicted Morilla under 18 U.S.C. § 1956, and added another two points "[b]ecause the offense involved sophisticated laundering" under "[U.S.S.G.] § 2S1.1(b)(3)" (*id.* at ¶¶ 39, 40). The officer then subtracted two points because Morilla was a zero-point offender,

4

subtracted another two points because Morilla accepted responsibility, and then subtracted an additional point because Morilla cooperated with authorities (*id.* at ¶¶ 45-47). The PSI did not recommend an aggravating role or mitigating role adjustment for Morilla or any of the co-defendants (*id.* at ¶¶ 30-33). Based on the foregoing, Morilla's total offense level was 25 and criminal history category was I, yielding a guideline range of 57 to 71 months (*id.* at ¶¶ 48, 51, 91).

Morilla subsequently objected to the PSI (D.E. 92). Relevant on appeal, he first argued he should have received a two-point adjustment for being a minor participant under U.S.S.G. § 3B1.2(b) because he was allegedly "less culpable than the average participant in the conspiracy" (*id.* at 2). He claimed that Diaz was "the leader of the conspiracy" who had recruited others to join it; that Calero had laundered money "on at least six occasions," was involved in the conspiracy for longer than Morilla, and was "responsible for laundering nearly twice the amount of money as Mr. Morilla"; and that while Gomez "only engaged in three separate occasions of money laundering," Gomez "was more deeply involved in the control and planning of the conspiracy" because Gomez "led other participants" and allegedly "proposed news ways to launder" (*id.* at 2-4). In response, the probation officer disputed that Morilla deserved a minor role adjustment because Morilla had laundered a total of $550,000 on three instances, and also because Morilla had a "vested interest" in the scheme since he earned fees (D.E. 138, at 2).

Morilla also objected to the sophisticated laundering enhancement, arguing that his "limited actions" did not amount to sophisticated laundering (D.E. 92, at 5). It appears that Morilla used the "sophisticated laundering" enhancement under U.S.S.G. § 2S1.1(b)(3), as well as the "sophisticated means" enhancement under U.S.S.G. § 2B1.1(b)(10)(C), interchangeably.[2]  Morilla argued that no enhancement should apply because "[t]here were no off-shor[e] accounts, fic[t]itious companies, or multi-level la[]yers of laundering" (*id.* at 6).  "Instead, Mr. Morilla took a single-step in moving money for the purpose of laundering" (*id.* at 7).  Also appearing to use the "sophisticated laundering" and "sophisticated means" enhancements interchangeably (D.E. 138, at 5-7), the probation officer in response argued that because "[o]thers in the conspiracy took cash and negotiated cashier's checks made out to covert companies," Morilla had used "sophisticated means" (*id.* at 3).

### C.    The Sentencing Hearing

The district court began the sentencing hearing addressing Morilla's objections (D.E. 226).    From the outset, the Government agreed that the sophisticated laundering enhancement should not apply, stating, "I am in agreement with defense counsel as it . . . relate[s] to sophisticated means" (*id.* at 2:20-21).[3]  But

---

[2]    The PSI specifically stated that Morilla deserved an enhancement for sophisticated laundering under U.S.S.G. § 2S1.1(b)(3) (D.E. 72, at ¶ 40).

[3]    It appears that the parties continued to use the "sophisticated laundering" and "sophisticated means" enhancements interchangeably throughout the sentencing hearing.  But ultimately, both Morilla and the Government clarified that they were

the parties did not share the same views with respect to the minor role adjustment. Morilla noted that Diaz was "the leader of the conspiracy"; Calero was "responsible for nearly twice the amount of money as" Morilla; and Gomez both "proposed new ways to launder . . . the money," and "demonstrate[d] some . . . amount of authority or recruitment" (*id.* at 3:8-10, 4:2-3, 11-15).   The Government countered by explaining that Morilla "was responsible for laundering approximately $550,000," and was "involved in many meetings with the undercover agent where it was explained to him, as it was explained to everybody else, that the moneys that w[ere] being laundered . . . were coming from illegal proceeds" (*id.* at 6:9-13).  Further, Diaz had testified "that there wasn't really a leader, per se; that each person kind of decided how much money they were going to retain from the laundering; that they participated based on the amount of risk that was posed to them" (*id.* at 6:15-19). Morilla even got to "decid[e] what information would actually be placed on the wires as to the nature of what the money transfer was about" (*id.* at 7:6-8).

The parties circled back to the sophisticated laundering enhancement, with Morilla explaining it should not apply as "[t]his was a one-step laundering case, all

---

discussing U.S.S.G. § 2S1.1(b)(3).  About half way through the hearing, Morilla's counsel remarked: "I think I said 2B [in previous arguments].  I meant 2S" (D.E. 226, at 9:17-18).   And the Government noted it was specifically making its arguments "based on my understanding of the case law and based on my review of 2S1.1" (*id.* at 5:13-14).  The district court, too, clarified it was only assessing that enhancement, stating, "I mean, I know it is 2S1.1" (*id.* at 9:1).

to banks in [S]outh Florida; no offshore accounts, no fictional or shell companies involved, no multilayered levels of laundering here" (D.E. 226, at 7:19-21).  Further, Morilla was "the owner of the account that he used" to launder the proceeds (*id.* at 7:23).  The Government "echo[ed]" Morilla's arguments "based on the factors that are outlined in [U.S.S.G. §] 2S1.1" (*id.* at 8:17-18).  In doing so, the Government recognized that "there was just one layer, which was the one transfer, one transaction from his [Morilla's] account into the undercover's account" (*id.* at 9:1-3).

The district court ultimately overruled both of Morilla's objections, finding "the offense conduct is sufficient to establish sophisticated means application, and, as well as to role in the offense, based on the offense conduct, based on the evidence that I heard at trial, and adopt the probation officer's response as to both objections" (D.E. 226, at 11:16-21).  The court added the sophisticated laundering enhancement "applied to the offense conduct . . . you don't have to differentiate between individual defendants" (*id.* at 10:4-6).  It then alternatively held that "in the event that there is any appeal on either of those objections, that I would impose a sentence independent of the guidelines as a reasonable sentence under post-Booker that would be equivalent to the sentence that I would impose under the guideline provision, as well. Okay.  So, you have that alternative sentence" (*id.* at 11:22-25, 12:1-2).[4]

---

[4]    Had the district court not applied the sophisticated laundering enhancement, Morilla's offense level would change from 25 to 23, and his guideline range would

The parties then made their arguments based on the 18 U.S.C. § 3553(a) factors. Each party sought a sentence of 57 months, which was at the bottom of the guideline range (D.E. 226, at 12:19-21, 14:18-21). Morilla argued first, immediately noting that he would be relying on the same arguments he had just made when making his objections: "There are several 3553(a) factors I would ask the Court to consider. I understand the Court's ruling as to minor role in this offense. But, I would ask the Court to consider some of the factors that I outlined in support of a sentence at the bottom of the guidelines for 57 months" (*id.* at 12:16-21). Morilla continued: "Again, your Honor, my client was only involved for one month when the scope of the conspiracy was much longer. He stood to gain less than the others. And, your Honor sat through the trial. I think it is fair to say my client barely came up through that evidence" (*id.* at 12:22-25, 13:1). Morilla also reminded the court that he was a zero-point offender with no criminal history and had accepted responsibility early in the case (*id.* at 13:4-15). Morilla also stressed his good character, remarking, "[h]e really is somebody—where this is a one-off from his character. I think the Court can see that through the PSI" (*id.* at 13:16-17). Morilla concluded by asking the court "to consider the family and community support that [he] has in court today," that "the worst part of this case is going to be the impact it

---

instead have been 46 to 57 months. Had the court also found that Morilla played a minor role, his offense level would be 21, and guideline range 37 to 46 months.

will have on [his] family," and that "[he] is the sole breadwinner in his family. His wife works at a laundromat, but he really provides most of the financial support" (*id.* at 13:22-25, 14:1-4). In response, the Government stressed the serious nature of the offense, the significant sums that Morilla had laundered, and the multiple transactions he made (*id.* at 14:18-25, 15:1-4).

The district court then formulated it sentence. It began by noting that it had "considered the 3553(a) factors," as well as the fact that Morilla was a zero-point offender, accepted responsibility, and cooperated (D.E. 226, at 15:25, 16:1-5). The court also looked to other circumstances: "Some of the other 3553(a) factors, I think, that ought to be considered, this was a substantial amount of money that was laundered over an extended period of time, involving a number of other individuals, which included—I mentioned the sophisticated means, that we applied, and that it involved concealment of the nature of the transaction" (*id.* at 16:10-15). The court also emphasized that the instant crime was tied to drug trafficking. It observed that "while it was not directly related to the distribution of narcotics, themselves, the money laundering aspect of any narcotics distribution system requires a money laundering aspect of it" (*id.* at 16:16-19). "So," the court surmised, "while he [Morilla] may not have purchased or he sold the drugs, it was the same money and greed that motivates drug offenders in the first place, that also motivates money launderers to make the narcotics organization successful" (*id.* at 16:20-23). As such,

10

"even though he may not have gotten his hands dirty with the drugs, his money laundering was also a dirty part of the overall conspiracy" (*id.* at 16:24-25, 17:1-2).

Having "considered the statements of all parties, the presentence report which contains the advisory guidelines and the statutory factors as set forth in Title 18, United States Code Section 3553(a)," the district court sentenced Morilla to 57 months' imprisonment, which was a sentence at the bottom of the applicable guideline range, as well as supervised release for two years (D.E. 226, at 17:3-13). Morilla preserved his objections "to the sophisticated means and minor role for procedural and substantive unreasonableness" (*id.* at 18:6-8).

Morilla now appeals his sentence (D.E. 166).

### 3. <u>Standard of Review</u>

When reviewing the district court's application of the sentencing guidelines, this Court "review[s] legal questions *de novo*, factual findings for clear error, and the district court's application of the guidelines to the facts with due deference, 'which is tantamount to clear error review.'" *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)). Under such a deferential standard of review, this Court will not reverse a district court's findings unless it is "left with a definite and firm conviction that a mistake has been committed." *United States v. Feaster*, 798 F.3d 1374, 1380 (11th Cir. 2015) (quoting *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010)).

11

Further, and as this Court explained, "[t]here is 'no clear error in cases in which the record supports the district court's findings.'" *United States v. Stein*, 964 F.3d 1313, 1321 (11th Cir. 2020) (quoting *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014)). *See also United States v. Puerto*, 392 F. App'x 692, 701 (11th Cir. 2010) (applying clear error review and affirming the district court's application of the sophisticated laundering enhancement); *United States v. Rodriguez De Varon*, 175 F.3d 930, 945-46 (11th Cir. 1999) (similarly applying clear error review and affirming the court's refusal to apply a minor role adjustment).

## Summary of the Argument

The district court did not commit reversible error in finding that the sophisticated laundering enhancement applied and did not commit clear error in finding the minor role adjustment did not. The court made a *Keene* finding when ruling on both the enhancement and adjustment, explaining that it would have imposed the same sentence based on the 18 U.S.C. § 3553(a) factors regardless of those rulings. Although the court made its *Keene* finding halfway through the sentencing hearing, before the parties formally presented their arguments based on the sentencing factors, the court already knew which of the sentencing factors were important based on the parties' arguments at the beginning of the hearing as well as its own review of the record. More specifically, all of Morilla's sentencing-based arguments (made after the court's *Keene* finding) were the same arguments he had

made at the beginning of the hearing when the parties addressed his objections with respect to the enhancement and adjustment (and before the court's *Keene* finding), or were contained in the PSI that the court would have reviewed before the hearing.

Should this Court disagree and deem the *Keene* finding deficient, the Government would agree with Morilla's first argument on appeal—that his money laundering was not, in fact, sophisticated. But the Government would not agree with his arguments concerning the minor role adjustment. The record more than sufficiently demonstrates that Morilla played a substantial role and was a key participant in the money laundering scheme. He laundered $550,000 on three occasions—a sum nearly half of all the money laundered in the four-person scheme.

## Argument

### I. This Court Need Not Reach the Merits of Morilla's Arguments on Appeal Because the District Court Made a Valid *Keene* Finding.

Morilla raises two issues: that the district court erroneously applied the sophisticated laundering enhancement pursuant to U.S.S.G. § 2S1.1(b)(3), and that it erroneously refused to apply him a minor role adjustment under U.S.S.G. § 3B1.2(b). But, as further explained below, this Court need not address the substance of his arguments because the district court made a valid *Keene* finding. "[T]he Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence." *Keene*, 470 F.3d at 1349

13

(quoting *United States v. Williams*, 431 F.3d 767, 773 (11th Cir. 2005) (Carnes, J., concurring)).  The basis for this "assumed error harmlessness inquiry" is a desire to avoid "pointless reversals and unnecessary do-overs of sentence proceedings."  *Id.* at 1349 (quoting *Williams*, 431 F.3d at 773 (Carnes, J., concurring)).

Here, the district court stated that it would have issued the same sentence regardless of whether it applied the sophisticated laundering enhancement or minor role adjustment.  After hearing arguments on both issues, the court announced that "in the event that there is any appeal on either of those objections, that I would impose a sentence independent of the guidelines as a reasonable sentence under post-Booker that would be equivalent to the sentence that I would impose under the guideline provision, as well" (D.E. 226, at 11:22-25, 12:1-2).  By imposing a sentence "independent of the guidelines," the court was invariably holding that its ultimate sentence would have been the same after consideration of the 18 U.S.C. § 3553(a) factors.  It thus made a *Keene* finding.  And, where a court makes a finding that it "would have imposed the same sentence, using its § 3553(a) authority, even without the enhancement," like here, this Court has "all [it] need[s]" to proceed to a substantive reasonableness analysis.  *Keene*, 470 F.3d at 1349.

Morilla does not dispute that the district court made a *Keene* finding.  But he hangs his hat on the exact timing of the *Keene* finding—calling it "premature" because "the court made its *Keene* finding before considering any of the factors

courts are required to consider when fashioning a sentence." Initial Br., at 36, 37. Not so. To be sure, the court made its *Keene* finding approximately halfway through the sentencing hearing, before the parties *formally* presented their arguments based on the section 3553(a) factors. But that does not mean that the court did not already know—based on the parties' arguments at the same sentencing hearing which they made before the *Keene* finding, and based on its extensive review and familiarity of the record, combined with its own experience judging money laundering cases in the past—which sentencing factors it viewed as important.

Indeed, the district court heard virtually *all* of Morilla's section 3553(a)-based arguments *prior* to the court's *Keene* finding—when the court heard argument on Morilla's objections. Then, Morilla had tried to argue why he deserved a minor role—noting, among other things, that "he did not join until March of 2023. That was nearly a year after the conspiracy began. He was only involved for one month. He didn't recruit anyone. And, he was responsible for nearly half the number of transactions as the other codefendants were. And, I think it is also notable that his laundering fee, as noted in paragraph 18 of the PSI, was six percent as compared to the 12 percent that was offered to at least one of the codefendants" (D.E. 226, at 4:16-23). These are the very same facts that form the *central basis* of Morilla's later arguments concerning the sentencing factors—as even Morilla acknowledged when he began those arguments then: "There are several 3553(a) factors I would ask the

Court to consider. I understand the Court's ruling as to minor role in this offense. But, I would ask the Court to consider some of the factors that I outlined in support of a sentence at the bottom of the guidelines for 57 months" (*id.* at 12:16-21).

What is more, after asking the district court to consider his minor role arguments again when considering the sentencing factors, Morilla went so far as to again detail them: "Again, your Honor, my client was only involved for one month when the scope of the conspiracy was much longer. He stood to gain less than the others" (D.E. 226, at 12:22-24). To be fair, Morilla did make other 3553(a)-based arguments, like the fact that he was a zero-point offender and had accepted responsibility early in the case (*id.* at 13:4-15). But these facts are contained in the PSI that the court would have already reviewed before the hearing (D.E. 72, at ¶¶ 45, 46, *see also* D.E. 226, at 17:3-6). Morilla also noted that the crime was out of character, but when doing so, relied on the PSI for support: "He really is somebody—where this is a one-off from his character. *I think the Court can see that through the PSI*" (D.E. 226, at 13:16-17 (emphasis added)). Last, Morilla asked the court to consider his family, who were sitting in court, and also the impact that his imprisonment would have on his family, especially his wife as he "is the sole breadwinner" who "provides most of the financial support" given that his wife "works at a laundromat" (*id.* at 13:22-25, 14:1-4). But the court would likely have already seen Morilla's family in court by the time of its *Keene* finding, and, certainly,

16

would have already known about Morilla's family's finances, including that his wife worked in a laundromat, through the PSI (D.E. 72, at ¶¶ 63, 66).

Accordingly, Morilla's section 3353(a) arguments shed no materially new insights or information compared to that already available to the court by the time of its *Keene* finding. The majority of Morilla's sentencing-based arguments made after the court's *Keene* finding were identical to his arguments made before the *Keene* finding. And, for any arguments that were not, such information would have been found in the PSI, which the court reviewed before the hearing.

By seeking reversal now, Morilla would have this Court fashion a bright-line rule that a district court could *never* consider *any* sentencing factors until the parties formally argued those factors at the sentencing hearing (and usually, towards the end of the hearing, after which the court would have heard argument concerning objections to the PSI). But consideration of the sentencing factors, in reality and in practice, occurs much before, including when a court entertains arguments about objections at the beginning of the sentencing hearing, and also when a court reviews the PSI, as it must, before the hearing. Ultimately, Morilla cites to no source—in statute or case law—proscribing a court from considering at least some of the sentencing factors before the parties formally present such arguments at the hearing.

Morilla stresses his right of allocution. But all of his arguments pertaining to that right do not apply in this case because he voluntarily declined to exercise that

17

right below: "THE COURT: Mr. Morilla, do you want to say anything on your own behalf before sentence is imposed?  THE DEFENDANT: No, no.  I will let my attorney speak for me" (D.E. 226, at 12:10-13).  Perhaps in another case such a right would matter—as it would necessarily form part of a sentencing-based argument the court would consider.  But where, like here, a defendant voluntarily declines to exercise his or her right to allocution, he or she cannot rely on that right for reversal.

In addition to determining whether the district court pronounced an alternative sentence based on the sentencing factors, a *Keene* finding requires a substantive reasonableness analysis.  *Keene*, 470 F.3d at 1349.  "In determining whether it is reasonable we must assume that there was a guidelines error—that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly—and then ask whether the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable."  *Id.*  This Court measures the substantive reasonableness of a sentence in light of the sentencing factors[5] and "the totality of the circumstances."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  This Court may vacate a sentence only if it is "left with the definite and

---

[5]    The sentencing factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (4) the need to deter criminal conduct; (5) the need to protect the public from additional crimes committed by the defendant; and (6) the advisory sentencing guidelines range.  *See* 18 U.S.C. § 3553(a).

18

firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).  The Court will not "set aside a sentence merely because [it] would have decided that another one is more appropriate." *Id.* at 1191.

Assuming error with respect to both the sophisticated laundering enhancement and minor role adjustment, Morilla's new total offense level would be 21, and with a criminal history category of I, results in a new guideline range of 37 to 46 months. Still, the district court's 57-month sentence, slightly above this new range, would be substantively reasonable.  Morilla's money laundering crimes were major, involving him laundering money on three separate occasions for a total of $550,000—a "substantial amount' as the court rightfully observed (D.E. 226, at 16:11).  Though there were four co-defendants all laundering money in the scheme, Morilla laundered nearly half of all sums (D.E. 72, at ¶¶ 29, 31).  As such, a sentence slightly above the new range would adequately reflect the seriousness of the offense and provide just punishment.  The court was also right to note that Morilla's misconduct was not just related to the money laundering, but also the underlying drug trafficking—making his crimes all the more culpable.  As the court remarked, "I am thinking that is an important part to know, even though he may not have gotten his

19

hands dirty with the drugs, his money laundering was also a dirty part of the overall conspiracy" (D.E. 226, at 16:24-25, 17:1-2).  Ultimately, the "weight to assign a particular sentencing factor is committed to the sound discretion of the district court."  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quoting *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008)).

Last, the sentence would be reasonable in light of the statutory maximum of twenty years that Morilla faced (D.E. 72, at ¶ 90).  In fact, the 57 months would comprise a little less than twenty-five percent the maximum.  *See United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014) (finding that a sentence "well below the maximum sentence" was "indicative of a reasonable sentence"); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (affirming reasonableness of a sentence "well below the maximum").

## II.    Should this Court Deem the *Keene* Finding Invalid, the Government Concedes that the Sophisticated Laundering Enhancement Does Not Apply.

Should this Court deem the district court's *Keene* finding invalid, the Government agrees with Morilla's first argument on appeal: that the district court erroneously applied the sophisticated laundering enhancement.  As Morilla rightly argues, "the district court failed to determine the scope of the joint criminal activity that [he] agreed to undertake pursuant to U.S.S.G. § 1B1.3 and applied the sophisticated laundering enhancement based on conduct committed by Mr. Morilla's

20

co-defendants prior to Mr. Morilla joining the conspiracy." Initial Br., at 25. In finding that the two-level enhancement applied, the court wholly reasoned that "the offense conduct is sufficient to establish sophisticated means application, and, as well as to role in the offense, based on the offense conduct, based on the evidence that I heard at trial, and adopt the probation officer's response as to both objections" (D.E. 226, at 11:16-21). Probation had similarly reasoned that the enhancement applied because "[o]thers in the conspiracy took cash and negotiated cashier's checks made out to covert companies" (D.E. 138, at 3).

But it was error for the district court to apply the enhancement based on the other co-defendants' conduct. As *United States v. Hunter*, 323 F.3d 1314 (11th Cir. 2003), explains, "to determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *Id.* at 1319 (quoting *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993)); *see also* U.S.S.G. § 1B1.3, cmt. n.3(B) ("[T]he accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity."). Here, the court never made any findings concerning the scope of the activity Morilla allegedly agreed to jointly undertake. Instead, it found the enhancement automatically "applied to the offense conduct" and that it did not "have to differentiate between individual defendants" (D.E. 226, at 10:4-6).

21

Nor could the district court have made any such findings. There is no evidence in the record supporting the enhancement. *Cf. United States v. Baldwin*, 774 F.3d 711, 727 (11th Cir. 2014) ("If the record otherwise supports the court's determination, a failure to make specific findings will not require vacating the sentence."). Below, Morilla pleaded guilty to money laundering on three occasions (D.E. 49). And each occasion did not involve any complex or intricate conduct—instead, Morilla would take cash from the UC, deposit it into his bank account, take out some money for himself, and then wire the rest of the money back to the UC (*id.* at 1-2). The conduct thus did not involve the use of any fictitious entities, any shell corporations, any offshore financial accounts, nor the use of two or more levels of transactions, transfers, or transmissions. *See* U.S.S.G. § 2S1.1 cmt. n.5(A).

### III.    Should this Court Deem the *Keene* Finding Invalid, Morilla Fails to Show that the District Court Clearly Erred in Refusing to Apply a Minor Role Adjustment.

Morilla lastly argues that the district court erred in declining to apply him a minor role adjustment. He claims that "[t]he minor role adjustment should have been applied because [his] conduct was limited to three, one-step laundering transactions over a period of one month, he lacked knowledge or control about the overall conspiracy, and he stood to gain much less than the other co-conspirators." Initial Br., at 15. He also once again takes issue with the court "failing to determine the scope of the criminal activity undertaken by [him]," and claims that "[w]ithout

this finding, the district court could not have properly considered whether [he] was entitled to a minor role adjustment." *Id.* at 33.

Morilla's arguments miss their mark in light of the record. To begin, U.S.S.G. § 3B1.2(b) provides for a two-level decrease if a defendant is a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). Such a participant is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. The determination of whether to apply a minor role adjustment "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt. n.3(C). The commentary further directs courts to consider the following factors: (a) "the degree to which the defendant understood the scope and structure of the criminal activity"; (b) "the degree to which the defendant participated in planning or organizing the criminal activity"; (c) "the degree to which the defendant exercised decision-making authority"; (d) "the nature and extent of the defendant's participation in the commission of the criminal activity"; and (e) "the degree to which the defendant stood to benefit from the criminal activity." *Id.* § 3B1.2 cmt. n.3(C)(i)-(v). Ultimately, it is the defendant's burden at sentencing to prove he or she is a minor participant. *De Varon*, 175 F.3d at 934. In determining a defendant's minor role in the offense, a district court first "must measure the defendant's role against the

23

relevant conduct for which [he or she] was held accountable at sentencing," and second, "may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." *Id.* at 945.

Here, Morilla's role in the relevant conduct was anything but minor. Looking only to the conduct that Morilla was personally engaged in, Morilla was responsible for laundering money (which he believed to be the proceeds of cocaine trafficking) on three separate occasions, amounting to $550,000 (D.E. 49, at 1-2, D.E. 72, at ¶¶ 24-27). These are substantial money laundering acts in and of themselves—the sums involved are great, the monies are the result of greatly culpable conduct, and Morilla committed the crimes on a great multitude of occasions. Furthermore, Morilla greatly benefitted from the scheme: paying himself $39,000 in fees over the course of the three transactions (D.E. 49, at 1-2). By paying himself a fee in every transaction he made, Morilla did, in fact, have a "vested interest" in the outcome of the scheme, despite his protestations on appeal (D.E. 138, at 2). And in comparison to the other co-defendants, there is no doubt that Morilla was a key participant who, arguably, played a greater role than some of them. After all, he was responsible for laundering nearly half of all the monies laundered in the entire scheme, which was more than the sums Diaz (zero) or Gomez ($200,000) personally laundered (D.E. 72, at ¶¶ 30-33). In sum, Morilla played an important or essential role in the scheme.

24

*De Varon*, 175 F.3d 930, is illuminating.  There, this Court affirmed a district court's finding that the defendant did not deserve a minor role adjustment—despite the defendant's status as being merely a drug courier in a larger drug trafficking operation.  *Id.* at 945-46.  The reason, this Court held, was because the drug courier had imported 512.4 grams of heroin—a "very large" amount.  *Id.* at 943.  This Court explained: "in the drug courier context . . . the amount of drugs imported is a material consideration in assessing a defendant's role in her relevant conduct."  *Id.*  In fact, the quantity of drugs is so material that the Court found it could be determinative: "Indeed, because the amount of drugs in a courier's possession—whether very large or very small—may be the best indication of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that amount of drugs may be dispositive—in and of itself—in the extreme case."  *Id.*  The Court concluded by finding that other factors mattered, too, including, the "fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, . . . and role in the distribution."  *Id.* at 945.

*De Varon*'s analysis is germane to the instant money laundering context. Instead of transferring a "very large" amount of drugs, Morilla transferred a very large amount of money—$550,000.  Instead of having an "equity interest" in the drugs, Morilla had an equity interest in the very monies he laundered—paying himself a percentage of the amount of money he laundered.  And instead of being a

25

"drug courier," he was a money launderer—perhaps not the mastermind who initiated the conspiracy, but one of the major players nonetheless who effectuated it.

Morilla seeks reversal because the district court failed to make specific findings concerning the scope of his criminal activity. But *De Varon* rejected this exact argument. *De Varon*, 175 F.3d at 947. As this Court held, "[i]n making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings. . . . So long as the district court's conclusion as to defendant's role in the offense is supported by the record, . . . a simple statement of the district court's conclusion is sufficient." *Id.* at 939. Morilla also complains that the lower court relied "solely on one factor" in its decision to not apply the adjustment: that he allegedly had a vested interest in the scheme. Initial Br., at 24. But that is not true—as explained above, the record shows multiple reasons why the court did not apply the adjustment, including that Morilla played a substantial role in the scheme and greatly benefited from it.

## Conclusion

Based on the foregoing, this Court should affirm Morilla's sentence.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By:   */s/Michael C. Mikulic*
Michael C. Mikulic
Assistant United States Attorney
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9280
Michael.Mikulic@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Michael C. Mikulic
Assistant United States Attorney

Of Counsel

27

## Certificate of Compliance

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

## Certificate of Service

I hereby certify that four copies of the above Brief for the United States were mailed to the Court of Appeals via Federal Express this 9th day of August 2024, and that, on the same day, the above brief was filed using CM/ECF and served via CM/ECF on MaeAnn Renee Dunker, Assistant Federal Public Defender, counsel for Carlos Alberto Morilla.

*/s/Michael C. Mikulic*
Michael C. Mikulic
Assistant United States Attorney

*cbe*

28